1
2
3
4
5
6
7
8                  UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    LISA LOUISE MAYNARD,                    Case No.  1:23-cv-01132-HBK

12                  Plaintiff,                ORDER DENYING PLAINTIFF'S MOTION
                                              FOR SUMMARY JUDGMENT, GRANTING
13          v.                                DEFENDANT'S MOTION FOR SUMMARY
                                              JUDGMENT, AND AFFIRMING THE
14    MARTIN O'MALLEY,                        DECISION OF THE COMMISSIONER OF
      COMMISSIONER OF SOCIAL                  SOCIAL SECURITY[2]
15    SECURITY,[1]
                                              (Doc. Nos. 17, 19)
16                  Defendant.

17

18

19          Lisa Louise Maynard ("Plaintiff") seeks judicial review of a final decision of the

20   Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

21   supplemental security income under the Social Security Act.  (Doc. No. 1).  The matter is

22   currently before the undersigned on the parties' briefs, which were submitted without oral

23   argument.  (Doc. Nos. 17, 19-20).  For the reasons stated, the Court denies Plaintiff's motion for

24   summary judgment, grants Defendant's motion for summary judgment, and affirms the

25

26   [1] This action was originally filed against Kilolo Kijakazi in his capacity as the Commissioner of Social
     Security.  (See Doc. No. 1). The Court has substituted Martin O'Malley, who has since been appointed the
27   Acting Commissioner of Social Security, as the defendant in this suit.  See Fed. R. Civ. P. 25(d).
     [2] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C.
28   §636(c)(1).  (Doc. No. 13).

1   Commissioner's decision.

## I.     JURISDICTION

3       Plaintiff protectively filed for supplemental security income on July 29, 2019, alleging a

4   disability onset date of July 29, 2019.  (AR 127-36).  Benefits were denied initially (AR 206-16,

5   233-38) and upon reconsideration (AR 217-30, 240-45).  Plaintiff appeared for a hearing before

6   an administrative law judge ("ALJ") on September 8, 2022.  (AR 32-55).  Plaintiff testified at the

7   hearing and was represented by counsel.  (*Id*.).  The ALJ denied benefits (AR 12-31) and the

8   Appeals Council denied review (AR 1-6).  The matter is before the Court under 42 U.S.C. §

9   1383(c)(3).

## II.     BACKGROUND

11       The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's

12   decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are

13   summarized here.

14       Plaintiff was 60 years old at the time of the hearing.  (*See* AR 455).  She completed

15   twelfth grade.  (AR 38).  She lives with her mother.  (AR 38).  She has no relevant work history.

16   (AR 39, 51).  Plaintiff testified she can no longer work because of pain, fatigue, and depression.

17   (AR 39).  She experiences consistent pain in her joints "all over" her body due to fibromyalgia,

18   that is constantly throbbing and sometimes pinching.  (AR 39-41).  With medication, she reports

19   her pain is a five or six on a scale of one to ten.  (AR 41).  Plaintiff testified that she cries easily

20   and has considered hurting herself due to depression, but those feelings "come and go."  (AR 42).

21   She reported stopping mental health therapy at one point because she was feeling better and

22   didn't think she needed it anymore, but she resumed therapy because she was "wrong."  (AR 42).

23   Plaintiff reported her hands go to sleep and go numb "all the time," and she is waiting for a

24   referral for carpal tunnel syndrome.  (AR 43-44).  She can use her hands for 15 minutes before

25   she must stop and rest them for 10-15 minutes, she can carry 10 pounds at the most, she can stay

26   on task for 60 to 70 percent of the day, and she takes rest breaks 6-7 hours a day during an 8-hour

27   period due to her combined problems.  (AR 44-47).  Plaintiff testified that she doesn't like to go

28   out or be around people and has problems with memory and focus.  (AR 44, 46).

### III.   STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence e" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### IV.   SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

1    The Commissioner has established a five-step sequential analysis to determine whether a

2    claimant satisfies the above criteria.  See 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the

3    Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the

4    claimant is engaged in "substantial gainful activity," the Commissioner must find that the

5    claimant is not disabled.  20 C.F.R. § 416.920(b).

6    If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

7    two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20

8    C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of

9    impairments which significantly limits [his or her] physical or mental ability to do basic work

10   activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's

11   impairment does not satisfy this severity threshold, however, the Commissioner must find that the

12   claimant is not disabled.  20 C.F.R. § 416.920(c).

13   At step three, the Commissioner compares the claimant's impairment to severe

14   impairments recognized by the Commissioner to be so severe as to preclude a person from

15   engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as

16   severe or more severe than one of the enumerated impairments, the Commissioner must find the

17   claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

18   If the severity of the claimant's impairment does not meet or exceed the severity of the

19   enumerated impairments, the Commissioner must pause to assess the claimant's "residual

20   functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's

21   ability to perform physical and mental work activities on a sustained basis despite his or her

22   limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

23   At step four, the Commissioner considers whether, in view of the claimant's RFC, the

24   claimant is capable of performing work that he or she has performed in the past (past relevant

25   work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant

26   work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If

27   the claimant is incapable of performing such work, the analysis proceeds to step five.

28   At step five, the Commissioner considers whether, in view of the claimant's RFC, the

4

1    claimant is capable of performing other work in the national economy.  20 C.F.R. §

2    416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational

3    factors such as the claimant's age, education, and past work experience.  20 C.F.R. §

4    416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must

5    find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of

6    adjusting to other work, analysis concludes with a finding that the claimant is disabled and is

7    therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

8          The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*,

9    180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the

10    Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

11    work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran*

12    *v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

13                              **V.    ALJ'S FINDINGS**

14          At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity

15    since June 29, 2019, the application date.  (AR 17).  At step two, the ALJ found that Plaintiff has

16    the following severe impairments: fibromyalgia, depression, and anxiety.  (AR 17).  At step three,

17    the ALJ found that Plaintiff does not have an impairment or combination of impairments that

18    meets or medically equals the severity of a listed impairment.  (AR 18).  The ALJ then found that

19    Plaintiff has the RFC to

20          perform medium work as defined in 20 CFR 416.967(c) except the
              claimant can frequently climb ramps and stairs, stoop, crouch, and
21          reach overhead bilaterally; occasionally climb ladders, ropes, and
              scaffolds. She can frequently operate a motor vehicle and would be
22          capable of performing jobs of a noncomplex nature requiring the
              performance of no more than simple, routine tasks.  The claimant is
23          able to maintain occasional contact with supervisors, coworkers, and
              members of the general public, and should not work in environments
24          requiring daily or weekly production quotas such as assembly line
              work.
25

26    (AR 19).  At step four, the ALJ found that Plaintiff has no past relevant work.  (AR 25).  In the

27    alternative, at step five, the ALJ found that considering Plaintiff's age, education, work

28    experience, and RFC, there are jobs that exist in significant numbers in the national economy that

Plaintiff can perform, including floor waxer, machine packager, and coffee maker.  (AR 25-26).
On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the
Social Security Act, since July 29, 2019, the date the application was filed.  (AR 26).

## VI.    ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her
supplemental security income benefits under Title XVI of the Social Security Act.  (Doc. No. 1).
Plaintiff raises the following issues for this Court's review:

1.  Whether the RFC was supported by substantial evidence and free from legal error in
light of the ALJ's consideration of the medical opinion evidence; and

2.  Whether the ALJ properly considered Plaintiff's symptom claims.

(Doc. No. 17 at 16-26).

## VII.    DISCUSSION

### A. RFC/Medical Opinion

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations."
20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(a). The RFC assessment is an administrative
finding based on all relevant evidence in the record, not just medical evidence.  *Bayliss v.
Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  In determining the RFC, the ALJ must consider
all limitations, severe and non-severe, that are credible and supported by substantial evidence in
the record.  (*Id.*) (RFC determination will be affirmed if supported by substantial evidence).
However, an ALJ's RFC findings need only be consistent with relevant assessed limitations and
not identical to them.  *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010).
Ultimately, a claimant's RFC is a matter for the ALJ to determine.  *See Vertigan v. Halter*, 260
F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ ... to determine
residual functional capacity.").

Plaintiff argues the ALJ erred in assessing the physical and mental RFC because he
improperly considered the medical opinions of Derik Keshishian, M.D., M. Jakubowski, Psy.D.,
and Rochelle Smith, LMFT.  (Doc. No. 17 at 16-24)  For claims filed on or after March 27, 2017,
new regulations apply that change the framework for how an ALJ must evaluate medical opinion

evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…"  *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements").  20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Supportability and consistency are explained in the regulations:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the

1  same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3)

2  through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

3       The Ninth Circuit has additionally held that the new regulatory framework displaces the

4  longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and

5  convincing" reasons for rejecting a treating or examining doctor's opinion.  *Woods v. Kijakazi*, 32

6  F.4th 785, 787 (9th Cir. 2022).  Nonetheless, in rejecting an examining or treating doctor's

7  opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by

8  substantial evidence.  *Id.* at 792.  This means that the ALJ "must 'articulate ... how persuasive'

9  [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain

10  how [he or she] considered the supportability and consistency factors' in reaching these findings."

11  *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

12       **1.  Physical RFC - Derik Keshishian, M.D.**

13       In February 2021, Plaintiff's treating physician Dr. Keshishian identified Plaintiff's

14  primary impairments as chronic pain and bilateral carpal tunnel syndrome.  (AR 634).  He opined

15  that in an 8-hour workday, "per patient report," Plaintiff cannot stand for more than 20 minutes,

16  can sit for 30 minutes, can stand and walk for 20 minutes, can lift only 10 pounds, and needs to

17  lie down for six hours.  (*Id.*).  He noted that Plaintiff could reach, handle, push, pull, and grasp for

18  5% of an 8-hour workday, feel for 10% of an 8-hour workday, reach for 5 minutes without resting

19  her hands, grasp for 6 minutes without resting her hands, feel for 7 minutes without resting her

20  hands, and push, pull, and handle for 8 minutes without resting her hands.  (AR 635).  In August

21  2022, Dr. Keshishian completed an additional questionnaire similarly indicating that, based on

22  Plaintiff's self-report, she cannot stand for more than 15-20 minutes, cannot sit for more than 20

23  minutes, can lift 10 pounds for 2-3 hours over an 8-hour workday, could sit for 60-90 minutes and

24  stand/walk 60 minutes total over an 8-hour period, and must lie down due to pain and fatigue.

25  (AR 658).

26       The ALJ found Dr. Keshishian's report was not persuasive "as these limits are not

27  consistent with or supported by the record that indicates limited treatment for physical issues."

28  (AR 24).  First, as to supportability, the ALJ notes the only objective findings cited by Dr.

1   Keshishian in support of the opined limitations is the EMG report "which appears to be from

2   2019." (AR 24). Plaintiff argues this reason is "based on speculation and presumption" because

3   it was performed only 15 months before the opinion and no subsequent tests showed the carpal

4   tunnel had improved. (Doc. No. 17 at 17). This argument is misplaced. In considering

5   supportability under the new regulations "the more relevant the medical evidence and supporting

6   explanations presented by a medical source are to support" the medical opinion, the more

7   persuasive the medical opinion will be. 20 C.F.R. § 416.920c(c)(1); *Bayliss*, 427 F.3d at 1216

8   ("an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and

9   inadequately supported by clinical findings."); *Tommasetti*, 533 F.3d 1041 ("[a]n ALJ may reject

10  a [] physician's opinion if it is based 'to a large extent' on claimant's self-reports that have been

11  properly discounted as incredible" as opposed to objective findings and supporting explanations).

12  Here, the ALJ specifically noted that aside from the single objective EMG report, Dr. Keshishian

13  "indicated [the opined] limits were all based on the claimant's subjective report." (AR 24, 634-

14  35, 658). Thus, it was reasonable for the ALJ to find Dr. Keshishian's was not persuasive based

15  on his failure to present and explain how the medical evidence, as opposed to Plaintiff's own

16  subjective reports, supported the severity of his opined limitations, including sitting, standing and

17  walking for 20 minutes at a time, and significant limitations in manipulative activities. (AR 20,

18  259); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where the evidence is susceptible to

19  more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

20         Second, the ALJ found that "the record does not indicate treatment for carpal tunnel

21  syndrome" and Plaintiff testified she is awaiting a referral for treatment; and while the record

22  does include Plaintiff's complaints of pain related to fibromyalgia, the overall record does not

23  support the severity of the limitations opined by Dr. Keshishian. (AR 24). As to the ALJ's

24  findings regarding carpal tunnel syndrome, Plaintiff again argues the ALJ's reasoning was based

25  on "speculation and presumption" because Dr. Keshishian referred Plaintiff to a neurologist and

26  the ALJ did not ask Plaintiff at the hearing "why it was taking so long for her to get a referral."

27  (Doc. No. 17 at 17-18 (arguing "possible reasons" for lack of treatment including COVID

28  lockdown, lack of insurance coverage, and "delays" caused by Plaintiff's hysterectomy in 2020)).

However, Plaintiff does not cite any treatment specifically for carpal tunnel syndrome in support of this argument, aside from the EMG test also noted by the ALJ.  Defendant responds that there is no evidence that any of the reasons suggested by Plaintiff affected her ability to get treatment, and on the record before the ALJ it was reasonable to infer that Plaintiff did not seek treatment for carpal tunnel, and at the time of the hearing was still waiting for a referral for treatment, because her symptoms were not severe.  (Doc. No. 19 at 16); *Tommasetti,* 533 F.3d at 1040 (ALJ may draw inferences logically flowing from evidence); *Magallanes v. Bowen,* 881 F.2d 747, 755 (9th Cir. 1989).  Regardless, pursuant to the new regulations, the ALJ considered the limitations opined by Dr. Keshishian and found they were not consistent with medical sources in the record that largely did not reflect treatment for any physical issues, including carpal tunnel syndrome. 20 C.F.R. § 416.920c(c)(2); *Sy S. v. Comm'r Soc. Sec. Admin*., 2024 WL 2292447, at *5 (D. Or. May 21, 2024) ("lack of contemporaneous treatment is another valid reason to discount a medical opinion.").

As to fibromyalgia, Plaintiff argues the ALJ did not sufficiently explain how the overall record did not support limitations caused by Plaintiff's fibromyalgia as part of the consistency analysis under the revised regulations.  (Doc. No. 17 at 19 (citing *Woods*, 32 F.4th 792)).  However, as above, the ALJ specifically found that the limitations opined by Dr. Keshishian are inconsistent with the medical record that indicates limited treatment for physical issues.  The ALJ acknowledged the record included Plaintiff's complaints of pain from fibromyalgia (AR 24, 542), but elsewhere in the decision cites large portions of the overall record revealing "limited treatment for physical issues," including Plaintiff's report that she took only over the counter pain medication February 2021 and was prescribed Tramadol for pain at the time of the decision.  (AR 21; *see e.g*., 489 (listing Aleve as only medication for pain), 495, 520, 523, 539 (noting she has frequent pain but stays active with walking her dogs), 546-70, 571-632 (mental health treatment), 660-700 (same).  As above, it was reasonable for the ALJ to find the limitations opined by Dr. Keshishian, including inability to walk, stand, and sit for more than 20 minutes, was not consistent with medical source treatment records in the "overall record" indicating little to no treatment for fibromyalgia.  20 C.F.R. § 416.920c(c)(2); *Sy S.*, 2024 WL 2292447, at *5.

10

Plaintiff also argues the ALJ "assessed no limitations caused by Plaintiff's fibromyalgia." (Doc. No. 17 at 19).  However, as noted by Defendant, the ALJ specifically found that "based upon the complaints of pain from fibromyalgia, a limitation to medium range of work . . . is consistent with the overall record." (AR 23-24).  Finally, Plaintiff appears to argue that the ALJ improperly relied on a lack of objective evidence in the overall record to support the rejection of the limitations due to fibromyalgia, including pain and fatigue.  (Doc. No. 17 at 19 ("those who suffer from fibromyalgia have normal muscle, strength, sensory functions, reflexes and joints and no objective swelling, so these signs would not be reflected in the record.") (citing *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017)).  This argument is unavailing because the ALJ did not find the opined limitations unpersuasive because they were inconsistent with normal objective findings; rather, as discussed extensively above, they were inconsistent with the lack of evidence of treatment from other medical sources in the overall record.

For all of these reasons, the ALJ's finding that Dr. Keshishian's opinion was not persuasive is supported by substantial evidence after proper consideration of the supportability and consistency factors.  Accordingly, the Court finds no error in the ALJ's assessment of the physical RFC on this basis.

### 2.  Mental RFC

#### a.  M. Jakubowski, Psy.D.

In May 2022, consultative examiner Marine Jakubowski, Psy.D. examined Plaintiff and opined marked limitations in her ability to perform work activities without special or additional supervisions, interact with coworkers and the public, and deal with the usual stresses encountered in a competitive work environment.  (AR 655-56).  Dr. Jakubowski also opined that Plaintiff is "mildly to markedly" limited in her ability to complete a normal workday or workweek without interruptions resulting from her psychiatric condition; "moderately to markedly" limited in her ability to accept instructions from supervisors; and moderately limited in her ability to understand, remember, and perform complex written and oral instructions.  (*Id*.).  The ALJ found the marked restrictions not fully consistent with or supported by the record, and thus found the opinion was not fully persuasive.  (AR 23).

First, the ALJ found

> there is a gap in therapy treatment from March of 2021 until she returned in January of 2022, and the recent records suggest moderate, at most, depression.  The claimant had improvement in her symptoms with medication, and while she did have continuing situational stressors, she was able to go on a trip, take care of her personal needs, and she was looking for work [].

(AR 23 (internal citations omitted).  Plaintiff argues these reasons are not supported by substantial evidence because Plaintiff "stayed in therapy throughout the rest of the relevant time, and the activities identified by the ALJ are not inconsistent with Dr. Jakubowski's opinion.  (Doc No. 17 at 21-22).  As an initial matter, while not identified or challenged by Plaintiff, the ALJ found the marked limitations were not fully consistent with the record, including treatment records suggesting "moderate, at most, depression," and improvement of symptoms while on medication.  (AR 21, 23, 555-56, 561, 583 (reporting she quit her part-time job because she was afraid of contracting COVID-19), 586-87, 611, 627, 660, 662, 668 (presented in content talkative manner), 670 (same), 680-81 (noting she was open to part time work), 684, 688 (deciding she needed to return to therapy), ); 20 C.F.R. § 416.920c(c)(2) ("The more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be"); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court may decline to consider issues not raised with specificity in plaintiff's opening brief).  Moreover, while Plaintiff contends the record "belies" the ALJ's "presumption" that she "stopped therapy for a while because she no longer needed it," her own briefing recognizes that Plaintiff testified at the hearing that she stopped going to therapy because she thought she did not need it.  (Doc. No. 17 at 21; AR 42 ("I was just feeling better and I didn't think I needed therapy and I was wrong."); *see, e.g.*, *Molina v. Astrue*, 674 F.3d 1101, 1113-14 (9th Cir. 2012) (affirming an ALJ's discounting a claimant's testimony based on a resistance to treatment, where there was no evidence that the resistance was based on her impairments rather than her personal preference).

It was also reasonable for the ALJ to discount Dr. Jakubowski's opinion because the opined marked limitations, including the ability to interact with coworkers and the public, were inconsistent with Plaintiff's reported functioning, particularly as to her ability to go on a trip to Disneyland, take care of her personal needs, and look for work. (AR 21, 23, 627 (doing online dating), 668, 670 (reporting she had a good time with her older daughter in LA at Disneyland but also felt anxiety), 676, 672; *see Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 601-02 (1999) (ALJ may discount a medical opinion that is inconsistent with a claimant's reported functioning); *Burch*, 400 F.3d at 679.  Finally, the ALJ noted Plaintiff never required hospitalization or needed less conservative care than outpatient counseling and medication.  (AR 23).  Plaintiff notes that "there is no requirement that an individual must be admitted to a psychiatric hospital in order to have the marked limitations opined by Dr. Jakubowski," and further argues that "[a]lthough Plaintiff's limitations were not 'extreme' and did not require hospitalization, the medical evidence is not inconsistent with the 'marked' limitations Dr. Jakubowski opined." (Doc. No. 17 at 23-24).  However, even assuming, arguendo, that the ALJ erred in considering lack of hospitalization as a reason to find the opinion less persuasive, any error is harmless because the ALJ offers additional reasons, supported by substantial evidence, to find Dr. Jakubowski's opinion was not consistent with the overall record.  *See Carmickle*, 533 F.3d at 1162-63 (error in considering one of several reasons given in support of ALJ's finding was harmless because the remaining reasons and ultimate determination were supported by substantial evidence).

Second, the ALJ found Dr. Jakubowski's opinion was not fully persuasive "as this was a one-time examination, and the marked findings are not supported by the overall record." (AR 23).  Plaintiff concedes this reasoning "implicates both the supportability and consistency factors provided by the Regulations," but contends the ALJ failed to sufficiently articulate his reasons for this finding.  (Doc. No. 17 at 22-23).  As an initial matter, while it would not be a legally sufficient basis for rejecting the opinion standing alone, the ALJ is permitted to consider the length, purpose, and extent of the treating relationship in considering the persuasiveness of a medical opinion under the new regulations.  *See* 20 C.F.R. § 404.1520c(c)(3).  Plaintiff

1  additionally argues the ALJ failed to consider evidence more favorable to her in evaluating the

2  supportability of Dr. Jakubowski's opinion, including her own mental status observations that

3  Plaintiff's had anxious mood and affect, and diminished memory.  (*Id*. at 23).  However, as noted

4  by Defendant, the ALJ set out, in detail, Dr. Jakubowski's own mental status examination

5  findings including normal posture and mannerisms, good eye contact, clear and rational thought

6  processes, no evidence of hallucinations, delusions or other unusual thought content, anxious

7  mood reported by Plaintiff congruent with her affect, normal speech, normal understanding of

8  instructions for simple tasks, moderate difficulty with complex tasks in understanding

9  instructions, diminished memory "in the somewhat low range for claimants her age," appropriate

10  fund of knowledge, fair concentration, abstractions, and similarities, and intact insight and

11  judgement.  (Doc. No. 19 at 20; AR 23, 653-54); *see* 20 C.F.R. § 416.920c(c)(1) ("the more

12  relevant the medical evidence and supporting explanations presented by a medical source are to

13  support" the medical opinion, the more persuasive the medical opinion will be).

14       Based on the foregoing, and regardless of evidence that could be considered more

15  favorable to Plaintiff, substantial evidence supports the ALJ's finding that the Dr. Jakubowski's

16  opinion was not fully persuasive because the opined marked limitations are not fully consistent

17  with or supported by the overall record.  20 C.F.R. § 416.920c(c)(1)-(2); *Burch*, 400 F.3d at 679

18  ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's

19  conclusion that must be upheld.").

20            **b.  Rochelle Smith, LMFT**

21       In February 2021, Rochelle Smith, LMFT opined that Plaintiff had moderate limitations in

22  all areas of work-related mental activities, except a marked limitation in her ability to withstand

23  the stress and pressures associated with an eight-hour day and day-to-day work activity; and she

24  would miss 30-50% of workdays per month due to mental issues.  (AR 633).  The ALJ found Ms.

25  Smith's opinion was not fully persuasive because the marked limitation is not fully consistent

26  with or supported by Plaintiff's moderate depressive symptoms.  20 C.F.R. § 416.920c(c)(1)-(2).

27  Plaintiff advances a one-sentence argument contending that the ALJ failed to consider whether

28  Ms. Smith's opinion was supported by her clinical observations or consistent with "positive

1  clinical findings" of Plaintiff's other treating medical sources. (Doc. No. 17 at 23). However, as

2  to supportability, the ALJ cited Ms. Smith's own clinical observation that Plaintiff "typically

3  presents with mostly normal mental status" (AR 24, 662, 684, 686-87, 696-97); and as to

4  consistency, the ALJ noted the opined marked limitation was not consistent with Plaintiff's

5  moderate depressive symptoms and "mostly consistent" counseling treatment across the

6  longitudinal record. (AR 21-24, 555-56, 561, 583, 586-87, 611, 660, 668, 680, 681). Thus, the

7  ALJ's finding that Ms. Smith's opinion was not fully persuasive is supported by substantial

8  evidence. 20 C.F.R. § 416.920c(c)(1)-(2); *Woods*, 32 F.4th at 792.

9         **c. RFC**

10        Finally, Plaintiff briefly notes the assessed mental RFC is "not based on a medical source

11  opinion" because the state agency physicians opined Plaintiff did not have a severe mental

12  impairment, the ALJ "rejected" the mental health opinions as discussed above, and "Dr. Dulanto,

13  whose opinion the ALJ found was 'somewhat persuasive' deferred offering opinions of Plaintiff's

14  mental functioning in three areas and in other areas found her mental functioning was 'adequate'

15  in other areas without explaining what he meant when using that term." (Doc. No. 17 at 24). As

16  an initial matter, in support of this argument, Plaintiff argues Dr. Dulanto's opinion is "of limited

17  probative value." (*Id.*). However, the ALJ is directed to consider all medical source evidence in

18  the record. *See* 20 C.F.R. § 404.1520c(a) (directing the ALJ to consider and evaluate the

19  persuasiveness of all medical opinions or prior administrative findings from medical sources).

20  Here, Dr. Dulanto opined that Plaintiff had "adequate" ability to maintain concentration and

21  attention for simple and/or complex tasking, receive and carry out instructions from supervisors,

22  and relate and interact with co-workers; and she had "no problems" understanding, remembering,

23  and carrying out simple one-or-two job instructions and dealing with the public. (AR 659). Dr.

24  Dulanto "deferred" findings as to Plaintiff's ability to understand, remember, and carry out an

25  extensive variety of technical and/or complex job instruction, withstand the stress and pressures

26  associated with an eight-hour workday and day-to-day work activity, and the likely number of

27  days Plaintiff would miss per month due to mental issues. (*Id.*). While not specifically

28  challenged by Plaintiff, the ALJ found the opined limitations were "somewhat persuasive" and

noted Plaintiff generally presents with normal mental status examination, had improvement in functioning with treatment, and as indicated in Dr. Dulanto's opinion, she was recently stable on her medications.  (AR 24-25).  As noted by Defendant, Plaintiff has not cited, nor does the Court discern, limitations opined by Dr. Dulanto that were not properly considered by the ALJ in assessing the RFC.  (Doc. No. 19 at 23); *Carmickle*, 533 F.3d 1155, 1161 n.2 (the court may decline to consider issues not "specifically and distinctly argued" in the party's opening brief).  Thus, the Court finds no error in the ALJ's consideration of Dr. Dulanto's opinion.

Finally, to the extent Plaintiff argues the RFC is unsupported by substantial evidence because it is not "based on" a single medical opinion, this argument is inapposite.  (Doc. No. 17 at 24).  Here, in assessing the RFC, the ALJ provided a detailed review of the medical evidence, properly evaluated the medical opinion evidence under the new regulations, and as discussed below, properly discounted Plaintiff's subjective complaints.  Plaintiff does not cite, nor does the Court discern, any specific functional limitations related to mental health limitations in the medical record, including the medical opinions, that were not properly accounted for the in the assessed RFC.  Thus, Plaintiff has not shown that the ALJ committed harmful error in formulating the "mental RFC" or in considering the medical opinion evidence.  *See Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC").

**B. Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Id*. (internal quotation marks omitted).  "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the

16

1   ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ]

2   gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d

3   1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are

4   insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

5   undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

6   1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a

7   credibility determination with findings sufficiently specific to permit the court to conclude that

8   the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and convincing

9   [evidence] standard is the most demanding required in Social Security cases." *Garrison v.

10  Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278

11  F.3d 920, 924 (9th Cir. 2002)).

12      Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably

13  be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning

14  the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with

15  the medical evidence and other evidence in the record" for several reasons.  (AR 20).

16      First, the ALJ found that "while [Plaintiff alleges debilitating physical issues, the overall

17  record indicates limited treatment for physical issues and appears to mostly focus on therapy to

18  deal with her divorce.  [Plaintiff] has complained of pain from fibromyalgia, but the only

19  medication for physical problems in February 2021 was Aleve and she currently takes tramadol

20  as well."  (AR 21 (citing 489 (listing Aleve as only medication for pain), 495, 520, 523, 539, 546-

21  70, 571-632 (mental health treatment focusing on divorce), 660-700 (same)).  Plaintiff argues this

22  finding "seeks to minimize Plaintiff's testimony of her mental limitations," and, while

23  acknowledging that Plaintiff stopped taking "most" of her prescribed medication for pain aside

24  from Aleve, she testified that she is taking Tramadol, an opioid pain reliever.  (Doc. No. 17 at

25  26).  These arguments are inapposite.  A plain reading of the ALJ's finding does not support a

26  finding that he was "minimizing" Plaintiff's mental health testimony; rather, he noted the record

27  focused primarily on mental health complaints and therapy surrounding her divorce, as opposed

28  to treatment for physical impairments.  (AR 21).  Moreover, limited treatment for physical

impairments, and conservative treatment with medication, are relevant factors in evaluating Plaintiff's physical symptom claims. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for an adverse credibility finding unless there is a showing of a good reason for the failure); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (treating ailments with an over-the-counter pain medication is evidence of conservative treatment sufficient to discount a claimant's testimony regarding the severity of an impairment); *see Warre*, 439 F.3d at 1006 (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits). These were clear and convincing reasons for the ALJ to discount Plaintiff's physical symptom claims.

Second, as to her claimed mental health symptom claims, the ALJ found (1) Plaintiff experienced improvement in mental health symptoms with treatment, and (2) she was looking for part time work in March 2022, went to Disneyland with her daughter, was doing online dating, and got a kitten. (AR 21). The Court may decline to consider this issue as Plaintiff fails to identify or challenge these specific reasons for discounting Plaintiff's symptom claims in her opening brief. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief). Regardless, improvement with treatment (AR 21, 555-56, 561, 583, 586-87, 611, 627, 672), and activities that contradict claims of a totally debilitating impairment (AR 21, 23, 627, 668, 670, 676, 672), are clear, convincing, and unchallenged reasons for the ALJ to discount Plaintiff's subjective claims. *See Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations); *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012)(internal citations omitted), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (Plaintiff's activities may be grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment); *see also Burch*, 400 F.3d at 679 ("where evidence is susceptible to more than one rational interpretation, it is the

[Commissioner's] conclusion that must be upheld.").

## VIII.   CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence.  42 U.S.C. § 405(g).  As discussed in detail above, the ALJ properly considered the medical opinion evidence and Plaintiff's symptom claims, and properly assessed the RFC.  After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 17) is DENIED.

2. Defendant's Cross-Motion for Summary Judgment (Doc. No. 19) is GRANTED, and the decision of the Commissioner of Social Security is AFFIRMED for the reasons set forth above.

3. The Clerk is directed to enter judgment in favor of the Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.

Dated:     September 16, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE